## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **TRANSCEND SHIPPING SYSTEMS, LLC,**<br>*Plaintiff,*<br><br>v.<br><br>**ORIENT OVERSEAS CONTAINER LINE LTD.,**<br>*Defendant.* | Case No. <u>2:21-cv-20</u><br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Transcend Shipping Systems, LLC ("Transcend") hereby files this Original Complaint for Patent Infringement against Orient Overseas Container Line Ltd. ("OOCL"), and alleges, upon information and belief, as follows:

### THE PARTIES

1.      Transcend is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.      Upon information and belief, Orient Overseas Container Line Ltd. is a limited company company organized and existing under the laws of Hong Kong with its principal office at Harbour Centre, 31st Floor, 25 Harbour Road, Wanchai, Hong Kong.

3.      Upon information and belief, OOCL also maintains an office in Texas at 7600 West Tidwell, Suite 700, Houston, Texas 77040.

### JURISDICTION AND VENUE

4.      Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

5.    The Court has personal jurisdiction under the Texas Long Arm Statute and the Due Process Clause of the U.S. Constitution over OOCL because they are present within or have minimum contacts within the State of Texas, including the Eastern District of Texas.

6.    OOCL has sought protection and benefit from the laws of the State of Texas; OOCL regularly conducts business within the State of Texas and within the Eastern District of Texas; and Plaintiff's cause of action arises directly from OOCL's business contacts and other activities in the State of Texas and in the Eastern District of Texas.

7.    More specifically, OOCL, directly and/or through intermediaries, ship, distribute, use, offer for sale, sell, and/or advertise products and services in the United States, the State of Texas, and the Eastern District of Texas including but not limited to the Accused Instrumentalities as detailed below. Upon information and belief, OOCL has committed patent infringement in the State of Texas and in the Eastern District of Texas. OOCL solicits and has solicited customers in the State of Texas and in the Eastern District of Texas. OOCL has paying customers, who are residents of the State of Texas and the Eastern District of Texas, who each use and have used the OOCL's products and services in the State of Texas and in the Eastern District of Texas.

8.    As an example, OOCL maintains an office in Texas at 7600 West Tidwell, Suite 700, Houston, Texas 77040. (See Figure 1 below).



Figure 1[1]

9.      Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).

10.     Venue is also proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c)(3) because Orient Overseas Container Line Ltd. is not a resident of the United States and therefore may be sued in any judicial district.

## PATENTS-IN-SUIT

11.     Transcend Shipping Systems, LLC is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 7,253,731 ("the '731 Patent"); 7,482,920 ("the '920 Patent"); 9,847,029 ("the '029 Patent"); 10,181,109 ("the '109 Patent"); and 10,796,268 ("the '268 Patent") (hereinafter collectively referred to as "the Transcend Patents").

---

[1] Source, as visited on January 15, 2021:  https://www.msc.com/usa/contact-us/msc-houston

12.     The Transcend Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

13.     The Transcend Patents each include numerous claims defining distinct inventions.

14.     The priority date of each of the Transcend Patents is at least as early January 23, 2001. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

15.     Plaintiff alleges infringement on the part of OOCL of each of the Transcend Patents.

16.     The '731 Patent relates generally to an apparatus, including a shipment conveyance device, associated with a shipment, which is a shipping a container, pallet, or tote, a memory device, located at the shipment conveyance device, in which information regarding the shipment is stored, a global positioning device, located at the shipment conveyance device, which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment and/or shipment conveyance device in response to an occurrence of an event or in response to a request for information and generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of the shipment, a shipment temperature, or an impact or force on the shipment conveyance device, and a transmitter, located at the shipment conveyance device, which transmits the message to a communication device. *See* Abstract, '731 Patent.

17.     The '920 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, piece of luggage, or tote, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device located in, on, or at, the shipment conveyance

device which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '920 Patent.

18.    The '029 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, or piece of luggage, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '029 Patent.

19.    The '109 Patent relates generally to an apparatus, including a shipment conveyance device, wherein the shipment conveyance device is a shipping container, pallet, or piece of luggage;

a receiver; a global positioning device which is located in, on, or at, the shipment conveyance device and which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, wherein the request for information is automatically received by the receiver, wherein the message contains information regarding a position or location of the shipment conveyance device; and a transmitter which is located in, on, or at, the shipment conveyance device and which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '109 Patent.

20.    The '268 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, a pallet, or a piece of luggage; a global positioning device, located in, on, or at, the shipment conveyance device, which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device which request is automatically received by a receiver, and which message contains information regarding a shipment of the shipment conveyance device; and a transmitter, located in, on, or at, the shipment conveyance device, which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '268 Patent.

21.    The claims of the Transcend Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Transcend Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of

elements, as recited in the claims, was not conventional or routine at the time of the invention.

22.    The '731 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '731 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.13, 340/568.1 and 340/572.1.

23.    After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 3,669,288, 06/1972, Young; (ii) US 5,317,323, 05/1994, Kennedy et al.; (iii) "Envirokare announces letter of intent with Electroship . . ." 2 page Envirokare press release dated Jul. 25, 2000"; (iv) US 5,825,283, 10/1998, Camhi; (v) US 6,044,990, 04/2000, Palmeri; (vi) US 6,464,142, 10/2002, Denenberg et al.; (vii) US 2002/0017996, 02/2002, Niemiec; (viii) FR 2816434, 05/2002, Touzet; (ix) US 5,877,707, 03/1999, Kowalick; (x) US 5,917,405, 06/1999, Joao; (xi) US 5,917,434, 06/1999, Murphy; (xii) US 6,046,678, 04/2000, Wilk; (xiii) US 6,148,291, 11/2000, Radican; (xiv) US 6,281,797, 08/2001, Forster et al.; (xv) US 6,292,828, 09/2001, Williams; (xvi) US 6,332,098, 12/2001, Ross et al.; (xviii) US 6,474,927, 11/2002, McAdams et al.; (xix) US 6,542,076, 04/2003, Joao; (xx) US 6,542,077, 04/2003, Joao; (xxi) US 6,549,130, 04/2003, Joao; (xxii) US 6,587,046, 07/2003, Joao; (xxiii) US 6,610,954, 08/2003, Takizawa; (xxiv) US 6,844,473, 01/2005, Quinlin et al.; (xxv) US 2002/0016655, 02/2002, Joao; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvii) US 2002/0116318, 08/2002, Thomas et al.; (xxviii) US 2002/0121969, 09/2002, Joao; (xxix) US 2002/0198774, 12/2002, Weirich; (xxx) US 2003/0009361, 01/2003, Hancock et al.; (xxxi) US 2003/0016130, 01/2003, Joao; (xxxii) US 2003/0067541, 04/2003, Joao;

(xxxiii) US 2003/0071899, 04/2003, Joao; (xxxiv) US 2003/0084125, 05/2003, Nagda et al.; (xxxv) US 2003/0193404, 10/2003, Joao; (xxxvi) US 2003/0206102, 11/2003, Joao; (xxxvii) US 2004/0160319, 08/2004, Joao; (xxxviii) US 2004/0230601, 11/2004, Joao; (xxxix) US 2005/0171835, 08/2005, Mook et al.; (xxxx) US 2005/0248444, 11/2005, Joao; (xxxxi) "Technology Executive . . . joins Envirokare as president and Director", 2 page Envirokare press release dated Sep. 5, 2000; and (xxxxii) "Envirokare Tech Inc. announces additions to advisory board", 3 page Envirokare press release dated Sep. 7, 2000.

24.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '731 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

25.     The '731 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

26.     The '920 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '920 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.11, 340/568.1 and 340/572.1.

27.   After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,825,283, 10/1998, Camhi; (ii)  US 6,046,678, 04/2000, Wilk; (iii) US 6,148,291, 11/2000, Radican; (iv) US 6,323,782, 11/2001, Stephens et al.; (v) US 6,429,810, 08/2002, De Roche; (vi) US 6,610,954, 08/2003, Takizawa; (vii) US 6,745,027, 06/2004, Twitchell, Jr.; and (viii) US 6,882,269, 04/2005, Moreno.

28.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '920 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

29.   The '920 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

30.   The '029 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '029 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G08G 1/20, G01S 13/84, G06Q 10/08, G06Q 10/087, G08B 1/08, G08G 1/202, G08G 1/205, H04W 4/02, and H04W 4/021.

31.   After conducting searches for prior art during the examination of the '029 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,640,002, 06/1997, Ruppert et al.; (ii) US 5,825,283, 10/1998, Camhi; (iii)   US 5,959,568, 09/1999, Woolley; (iv) US 6,046,678, 04/2000, Wilk; (v) US 6,148,291, 11/2000, Radican; (vi) US 6,281,797, 08/2001, Forster et al.; (vii) US 6,304,856, 10/2001, Soga; (viii) US 6,356,802, 03/2002, Takehara; (ix) US 6,411,891, 06/2002, Jones; (x) US 6,429,810, 08/2002, De Roche; (xi) US 6,610,954, 08/2003, Takizawa; (xii) US 6,745,027, 06/2004, Twitchell, Jr.; (xiii) US 6,748,318, 06/2004, Jones; (xix) US 6,859,722, 02/2005, Jones; (xx) US 6,882,269, 04/2005, Moreno; (xxi) US 6,904,359, 06/2005, Jones; (xxii) US 7,035,856, 04/2006, Morimoto; (xxiii) US 7,085,775, 08/2006, Short et al.; (xxiv) US 7,212,829, 05/2007, Lau et al.; (xxv) US 2002/0046173, 04/2002, Kelly; (xxvi) US 2002/0061758, 05/2002, Zarlengo et al.; (xxvii) US 2002/0120475, 08/2002, Morimoto; and (xxviii) US 2002/0132855, 07/2003, Swan.

32.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '029 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

33.   The '029 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology

and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

34.    The '109 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '109 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06Q 10/08, G06Q 10/083, G06Q 10/087, H04W 4/02, and H04W 4/021.

35.    After conducting searches for prior art during the examination of the '109 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 7,035,856, 04/2006, Morimoto; (iii) US 7,212,829, 05/2007, Lau et al.; (iv) US 7,253,731, 08/2007, Joao; (v) US 9,847,029, 12/2017, Joao; and (vi) US 2002/0120475, 08/2002, Morimoto.

36.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '109 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

37.    The '109 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

38.     The '268 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '268 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06Q 10/08 and G06Q 10/083.

39.     After conducting searches for prior art during the examination of the '268 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 6,148,291, 1/2000, Radican; (iii) US 6,492,904, 12/2002, Richards; (iv) US 7,035,856, 04/2006, Morimoto; (v) US 10,181,109, 01/2019, Joao; and (vi) US 2002/0111819, 08/2002, Li.

40.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '268 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

41.     The '268 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

42.     The claims of the Transcend Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics*

*Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

43.     The expiration dates of the Transcend Patents are at least the following: the '731 Patent expired on August 7, 2019 due to nonpayment of maintenance fees; the '920 Patent expires no earlier than April 27, 2022; the '029 Patent expires no earlier than November 1, 2023; the '109 Patent expires no earlier than January 22, 2022; and the '268 Patent expires no earlier than January 22, 2022.

## ACCUSED INSTRUMENTALITIES

44.     Upon information and belief, OOCL sells, advertises, offers for sale, uses, or otherwise provides smart containers ("shipment conveyance devices") for shipping and/or delivering goods, products, items, and/or other objects that infringe the Transcend Patents ("Accused Instrumentalities").

## COUNT I

### (Infringement of U.S. Patent No. 10,181,109)

45.     Plaintiff incorporates the above paragraphs by reference.

46.     OOCL has been on actual notice of the '109 Patent at least as early as the date it received service of this Original Complaint.

47.     On information and belief, OOCL owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

48.  Upon information and belief, OOCL has directly infringed and continues to directly infringe at least claims 1, 8, 10, 13 and 14 of the '109 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

49.  OOCL, with knowledge of the '109 Patent, also infringes at least claims 1, 8, 10 and 14 of the '109 Patent by inducing others to infringe the '109 Patent.  In particular, OOCL intends to induce its customers to infringe the '109 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

50.  OOCL also induces others, including its customers, to infringe at least claims 1, 8, 10 and 14 of the '109 Patent by providing technical support for the use of the Accused Instrumentalities.

51.  Upon information and belief, OOCL makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.  For example, OOCL provides shipping containers ("shipment conveyance devices") for shipping and/or delivering goods, products, items, and/or other objects that are equipped with monitoring devices (e.g., sensors) that monitor certain parameters in the container.  See Figures 2-4 below, which are screenshots of webpages associated with OOCL.



Figure 2[2]



Figure 3[3]

---

[2] Source, as visited on January 27, 2021:
http://ebook.oocl.com/myooclreefer_leaflet_nov/mobile/index.html#p=1

[3] Source, as visited on January 27, 2021:
http://ebook.oocl.com/myooclreefer_leaflet_nov/mobile/index.html#p=2



Figure 4[4]



Figure 5[5]

---

[4] Source, as visited on January 27, 2021:
http://ebook.oocl.com/myooclreefer_leaflet_nov/mobile/index.html#p=2

[5] Source, as visited on January 27, 2021:
http://ebook.oocl.com/reefer_leaflet2010_eng_f_reprint_pgs/mobile/index.html#p=1



Figure 6[6]

52.     Upon information and belief, OOCL provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device. For example, OOCL equips its shipping containers with monitoring devices that include a global positioning device. Further, OOCL provides an online platform ("My OOCL Center") which is used by customers to track and trace their cargo.  See Figures 2-4 above. See also Figures 7 and 8 below, which are screenshots of webpages associated with OOCL.

Figure 7[7]

---

[6] Source, as visited on January 27, 2021:
http://ebook.oocl.com/perfect_climate_2012_r2_pgs/mobile/index.html#p=2

Figure 8[8]

53.    Upon information and belief, OOCL provides a processor, wherein the processor generates a
message in response to an occurrence of the event or in response to a request for information
regarding the shipment conveyance device, wherein the request for information is
automatically received by the receiver, wherein the message contains information regarding a
position or location of the shipment conveyance device. For example, OOCL's shipping
containers are fitted with monitoring devices ("processing devices") which measure
information related to the shipping container, including one or more of, but not limited to,
temperature and relative humidity and sends that information to OOCL's central servers.
Therefore, OOCL provides a processor which processes information regarding the shipment
conveyance device. As a further example, OOCL's shipping containers equipped with
monitoring devices detect an event including one or more of, but not limited to, temperature
and relative humidity and, in response to the detected event, send alerts ("message")
containing information about the event to the customers of OOCL. Therefore, OOCL
provides a processor which generates a message in response to occurrence of an event and

---

[7] Source, as visited on January 27, 2021:
http://ebook.oocl.com/perfect_climate_2012_r2_pgs/mobile/index.html#p=1
[8]  Source, as visited on January 27, 2021:
http://ebook.oocl.com/perfect_climate_2012_r2_pgs/mobile/index.html#p=2

the message contains information regarding the position and location of the shipment conveyance device. As a further example, OOCL's shipping containers, fitted with monitoring devices, measure information using sensors including one or more of, but not limited to, a humidity sensor and a temperature sensor, and transmit information in the form of alerts to OOCL's customers after a request for information is received by OOCL automatically. Therefore, OOCL provides a receiver which receives a request for information automatically. See Figures 2-4, 7 and 8 above. See also Figures 9 and 10 below, which are screenshots of webpages associated with OOCL.



Figure 9[9]

---

[9] Source, as visited on January 27, 2021:
https://www.oocl.com/eng/aboutoocl/ooclit/project/Pages/MyOOCLReefer.aspx

**Innovative Technology**

- MyOOCLReefer, a pioneering GPS-based service, monitors container temperature, relative humidity and location during the entire shipment.

- Customers have full visibility of their shipment within seconds via our web-based platform.

- Detection of any significant temperature or humidity deviations from the set points will trigger e-Alerts for immediate and corrective action.

- **CargoSmart™** helps customers better manage their shipments anytime, anywhere, with IT-based solutions including Booking Request, Sailing Schedule, Cargo Tracking, Milestone Notifications, Arrival Notice, Importer Security Filing, Shipment Exception Alerts, and more.

Figure 10[10]

54.   Upon information and belief, OOCL provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.  For example, OOCL's shipping containers ("shipment conveyance device"), fitted with monitoring devices, send information ("message") including one or more of, but not limited to, location, temperature and humidity, to OOCL's customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through My OOCL Center). Therefore, OOCL provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message. See Figures 2-4 and 7-10 above.

---

[10]  Source, as visited on January 27, 2021:
http://ebook.oocl.com/perfect_climate_2012_r2_pgs/mobile/index.html#p=2

55.   Upon information and belief, OOCL provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, OOCL's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor and a humidity sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, OOCL's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device. See Figures 2-4 and 7-10 above.

56.   Upon information and belief, OOCL also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device. For example, OOCL's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to OOCL's customers. Therefore, OOCL provides a message which contains information regarding temperature of shipment and a change in shipment temperature. See Figures 9 and 10 above.

57.   Upon information and belief, OOCL further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.  For example, upon information and belief OOCL's shipping containers equipped with monitoring

devices store geofencing parameters allowing OOCL and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, OOCL's shipping containers equipped with monitoring devices detect events related to deviation from a pre-determined transportation route. See Figure 11 below, which is a screenshot of a webpage associated with OOCL.



Figure 11[11]

58.   Upon information and belief, OOCL further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage is a refrigerated container, a heated container, or an insulated container.  For example, OOCL's shipping containers include refrigerated reefer containers. See Figure 5 above.

59.   To the extent OOCL continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '109 Patent, such infringement is necessarily willful and deliberate.

---

[11]  Source, as visited on January 27, 2021:
http://ebook.oocl.com/perfect_climate_2012_r2_pgs/mobile/index.html#p=2

60.     On information and belief, OOCL has a policy or practice of not reviewing the patents of

others.  Further on information and belief, OOCL instructs its employees to not review the

patents of others for clearance or to assess infringement thereof.  As such, OOCL has been

willfully blind to the patent rights of Plaintiff.

61.     Each of OOCL's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT II

### (Infringement of U.S. Patent No. 9,847,029)

62.     Plaintiff incorporates the above paragraphs by reference.

63.     OOCL has been on actual notice of the '029 Patent at least as early as the date it received

service of this Original Complaint.

64.     On information and belief, OOCL owns and controls the operation of the Accused

Instrumentalities and generates substantial financial revenues therefrom.

65.     Upon information and belief, OOCL has directly infringed and continues to directly infringe

at least Claims 2, 12, 15 and 19 of the '029 Patent by making, using, importing, selling,

and/or, offering for sale the Accused Instrumentalities.

66.     OOCL, with knowledge of the '029 Patent, also infringes at least Claims 2, 12, 15 and 19 of

the '029 Patent by inducing others to infringe the '029 Patent.  In particular, OOCL intends

to induce its customers to infringe the '029 Patent by encouraging its customers to use the

Accused Instrumentalities in a manner that results in infringement.

67.     OOCL also induces others, including its customers, to infringe at least Claims 2, 12, 15 and

19 of the '029 Patent by providing technical support for the use of the Accused

Instrumentalities.

68.     As described above (*see* ¶ 51), and upon information and belief, OOCL makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a smart container, a pallet, or a piece of luggage.   For example, OOCL provides shipping containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with monitoring devices.

69.     As described above (*see* ¶ 52), and upon information and belief, OOCL provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.   For example, OOCL's shipping containers are fitted with the monitoring devices which comprise a global positioning device to determine a position/location of the shipping container. Further, OOCL provides an online platform ("My OOCL Center") which is used by customers to track and trace their cargo.

70.     As described above (*see* ¶ 53), and upon information and belief, OOCL also provides a processor, wherein the processor processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, and further wherein the processor generates a message in response to the occurrence of the event or in response to the request for information regarding the shipment conveyance device.   For example, OOCL's shipping containers are fitted with monitoring devices ("processing devices") which measure information related to the shipping container, including one or more of, but not limited to, temperature and relative humidity and sends that information to OOCL's central servers. Therefore, OOCL provides a processor which processes information regarding the shipment

conveyance device. As a further example, OOCL's shipping containers equipped with monitoring devices detect an event including one or more of, but not limited to, temperature and relative humidity and, in response to the detected event, send alerts ("message") containing information about the event to the customers of OOCL. Therefore, OOCL provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, OOCL's shipping containers, fitted with monitoring devices, measure information using sensors including one or more of, but not limited to, a humidity sensor and a temperature sensor, and transmit information in the form of alerts to OOCL's customers after a request for information is received by OOCL automatically.

71.     As described above (*see* ¶ 54), and upon information and belief, OOCL provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.  For example, OOCL's shipping containers ("shipment conveyance device"), fitted with monitoring devices, send information ("message") including one or more of, but not limited to, location, temperature and humidity, to OOCL's customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through My OOCL Center). Therefore, OOCL provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

72.    As described above (*see* ¶ 55), and upon information and belief, Defendant provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, OOCL's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor and a humidity sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, OOCL's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device.

73.    As described above (*see* ¶ 56), and upon information and belief, OOCL also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, OOCL's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to OOCL's customers. Therefore, OOCL provides a message which contains information regarding temperature of shipment and a change in shipment temperature.

74.    As described above (*see* ¶ 56), and upon information and belief, OOCL further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.  For example, upon information and belief OOCL's shipping

containers equipped with monitoring devices store geofencing parameters allowing OOCL and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, OOCL's shipping containers equipped with monitoring devices detect events related to deviation from a pre-determined transportation route.

75.   As described above (*see* ¶ 58), and upon information and belief, OOCL further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage is a refrigerated container, a heated container, or an insulated container.  For example, OOCL's shipping containers include refrigerated reefer containers.

76.   To the extent OOCL continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '029 Patent, such infringement is necessarily willful and deliberate.

77.   On information and belief, OOCL has a policy or practice of not reviewing the patents of others.  Further on information and belief, OOCL instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, OOCL has been willfully blind to the patent rights of Plaintiff.

78.   Each of OOCL's aforesaid activities has been without authority and/or license from Plaintiff.

## **COUNT III**

### **(Infringement of U.S. Patent No. 7,482,920)**

79.   Plaintiff incorporates the above paragraphs by reference.

80.   OOCL has been on actual notice of the '920 Patent at least as early as the date it received service of this Original Complaint.

81.   On information and belief, OOCL owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

82.  Upon information and belief, OOCL has directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11 and 16 of the '920 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

83.  OOCL, with knowledge of the '920 Patent, also infringes at least Claims 1, 5, 9, 11 and 16 of the '920 Patent by inducing others to infringe the '920 Patent.  In particular, OOCL intends to induce its customers to infringe the '920 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

84.  OOCL also induces others, including its customers, to infringe at least Claims 1, 5, 9, 11 and 16 of the '920 Patent by providing technical support for the use of the Accused Instrumentalities.

85.  As described above (*see* ¶ 51), and upon information and belief, OOCL makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a smart container, a pallet, or a piece of luggage.  For example, OOCL provides shipping containers ("shipment conveyance devices") for shipping and/or delivering goods, products, items, and/or other objects that are equipped with monitoring devices (e.g., sensors) that monitor certain parameters in the container.

86.  Upon information and belief, OOCL provides a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein the memory device stores information regarding a description of a good, product, or item, being shipped or transported via or which is contained in or on the shipment conveyance device, and origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, or payment instruction

information, regarding the shipment conveyance device. For example, OOCL's shipping containers are fitted with monitoring devices which comprise sensors including one or more of, but not limited to, temperature sensor and humidity sensor for measuring and transmitting information related to one or more of, but not limited to, temperature and humidity experienced by the shipping container ("shipment conveyance device"). As a further example, OOCL's shipping containers equipped with monitoring devices store at least an identification of OOCL (since it communicates position of the container and measurements from the sensors including but not limited to humidity sensor and temperature sensor, to a central server), and therefore OOCL provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, OOCL's shipping containers equipped with monitoring devices store at least an identification of OOCL's container (since it communicates position of the container and measurements from the sensors including but not limited to humidity sensor and temperature sensor, to a central server), and therefore OOCL provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, OOCL's shipping containers equipped with monitoring devices store at least an identification of OOCL's customer (since it communicates position of the container and measurements from the sensors present in the container including, but not limited to, humidity sensor and temperature sensor, to a central server (who may have multiple customers availing OOCL's services at any given time) correlate the information to the particular customer in order to provide updates to the customer), and therefore OOCL provides a memory device which stores at least one or more of origination information,

sender information, shipper information, destination information and receiver information regarding the shipment conveyance device. As a further example, OOCL's shipping containers equipped with monitoring devices store at least a description of a good, product, or item, being shipped via the shipment conveyance devices, because they identify the position/location and send the measurements from sensors including, but not limited to, humidity sensor and temperature sensor, of each individual shipment to the central server and/or OOCL's customer (who may have multiple shipments in transit at a given time). As a further example, OOCL's shipping containers equipped with monitoring devices store measurements from one or more of humidity sensor and temperature sensor, and therefore store a description of a good, product, or item, being shipped via the shipment conveyance devices. Further, OOCL's shipping containers equipped with monitoring devices store geofencing parameters allowing OOCL and/or the customer to receive alerts if the shipment conveyance device deviates from the planned route. Therefore, OOCL's shipping containers equipped with monitoring devices store at least destination information regarding the shipment conveyance devices. Further, OOCL's shipping containers equipped with monitoring devices store measurements and alerts regarding temperature and humidity and other handling parameters – and therefore stores at least handling instruction information for the shipment conveyance devices. See Figures 2-4 and 7-11 above.

87.    As described above (*see* ¶ 52), and upon information and belief, OOCL provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, OOCL equips its shipping containers with monitoring devices that include a global positioning device. Further, OOCL

provides an online platform ("My OOCL Center") which is used by customers to track and trace their cargo.   See Figures 2-4 above. See also Figures 7 and 8 below, which are screenshots of webpages associated with OOCL.

88.     As described above (*see* ¶ 53), and upon information and belief, OOCL also provides a processing device, wherein the processing device processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, wherein the processing device generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or a transportation of or involving the shipment conveyance device, a shipment or transportation temperature, or an impact or force on the shipment conveyance device.  For example, OOCL's shipping containers are fitted with monitoring devices ("processing devices") which measure information related to the shipping container, including one or more of, but not limited to, temperature and relative humidity and sends that information to OOCL's central servers. Therefore, OOCL provides a processor which processes information regarding the shipment conveyance device. As a further example, OOCL's shipping containers equipped with monitoring devices detect an event including one or more of, but not limited to, temperature and relative humidity and, in response to the detected event, send alerts ("message") containing information about the event to the customers of OOCL. Therefore, OOCL provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, OOCL's shipping containers, fitted with monitoring devices, measure information using sensors including one or more of, but not

limited to, a humidity sensor and a temperature sensor, and transmit information in the form of alerts to OOCL's customers after a request for information is received by OOCL automatically.

89.    As described above (*see* ¶ 54), and upon information and belief, OOCL provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, wherein the transmitter transmits the message to a communication device associated with an individual or entity, a sender of the shipment conveyance device, a receiver of the shipment conveyance device, a carrier of the shipment conveyance device, or an individual or entity authorized to receive information regarding the shipment conveyance device or information regarding a shipment or a transportation of or involving the shipment conveyance device. For example, OOCL's shipping containers ("shipment conveyance device"), fitted with monitoring devices, send information ("message") including one or more of, but not limited to, location, temperature and humidity, to OOCL's customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through My OOCL Center). Therefore, OOCL provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

90.    As described above (*see* ¶ 55), and upon information and belief, OOCL provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or the transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, OOCL's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature

sensor and a humidity sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, OOCL's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device.

91.    As described above (*see* ¶ 56), and upon information and belief, OOCL also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, OOCL's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to OOCL's customers. Therefore, OOCL provides a message which contains information regarding temperature of shipment and a change in shipment temperature.

92.    As described above (*see* ¶ 57), and upon information and belief, OOCL further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with the shipment or a transportation of or involving the shipment conveyance device.  For example, upon information and belief OOCL's shipping containers equipped with monitoring devices store geofencing parameters allowing OOCL and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, OOCL's shipping containers equipped with monitoring devices detect events related to deviation from a pre-determined transportation route.

93.    Upon information and belief, OOCL further provides an apparatus wherein the event is a detection of a shipment or transportation temperature which deviates from a shipment or

transportation temperature requirement. For example, OOCL's shipping containers equipped with monitoring devices transmit alerts to OOCL's customers when the temperature in the container is detected beyond a threshold, and therefore, detects events including, but not limited to, deviation in shipment temperature. See Figure 10 above.

94.    As described above (*see* ¶ 58), and upon information and belief, OOCL further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, or the tote is a refrigerated container, a heated container, or an insulated container.  For example, OOCL's shipping containers include refrigerated reefer containers.

95.    To the extent OOCL continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '920 Patent, such infringement is necessarily willful and deliberate.

96.    On information and belief, OOCL has a policy or practice of not reviewing the patents of others.  Further on information and belief, OOCL instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, OOCL has been willfully blind to the patent rights of Plaintiff.

97.    Each of OOCL's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT IV

### (Infringement of U.S. Patent No. 10,796,268)

98.    Plaintiff incorporates the above paragraphs by reference.

99.    OOCL has been on actual notice of the '268 Patent at least as early as the date it received service of this Original Complaint.

100.    On information and belief, OOCL owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

101.   Upon information and belief, OOCL has directly infringed and continue to directly infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

102.   OOCL, with knowledge of the '268 Patent, also infringes at least Claims 1, 8 , 10 and 12 of the '268 Patent by inducing others to infringe the '268 Patent.  In particular, OOCL intends to induce its customers to infringe the '268 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

103.   OOCL also induces others, including its customers, to infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

104.   As described above (*see* ¶ 51), and upon information and belief, OOCL makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.  For example, OOCL provides shipping containers ("shipment conveyance devices") for shipping and/or delivering goods, products, items, and/or other objects that are equipped with monitoring devices (e.g., sensors) that monitor certain parameters in the container.

105.   As described above (*see* ¶ 52), and upon information and belief, OOCL provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, OOCL equips its shipping containers with monitoring devices that include a global positioning device. Further, OOCL provides an online platform ("My OOCL Center") which is used by customers to track and trace their cargo.  See Figures 2-4 above.

106.   As described above (*see* ¶ 53), and upon information and belief, OOCL also provides a processor, wherein the processor generates a message in response to an occurrence of an event, or in response to a request for information regarding the shipment conveyance device which is automatically received by a receiver, wherein the message contains information regarding a shipment of the shipment conveyance device.  For example, OOCL's shipping containers are fitted with monitoring devices ("processing devices") which measure information related to the shipping container, including one or more of, but not limited to, temperature and relative humidity and sends that information to OOCL's central servers. Therefore, OOCL provides a processor which processes information regarding the shipment conveyance device. As a further example, OOCL's shipping containers equipped with monitoring devices detect an event including one or more of, but not limited to, temperature and relative humidity and, in response to the detected event, send alerts ("message") containing information about the event to the customers of OOCL. Therefore, OOCL provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, OOCL's shipping containers, fitted with monitoring devices, measure information using sensors including one or more of, but not limited to, a humidity sensor and a temperature sensor, and transmit information in the form of alerts to OOCL's customers after a request for information is received by OOCL automatically. Therefore, OOCL provides a receiver which receives a request for information automatically.

107.   As described above (*see* ¶ 54), and upon information and belief, OOCL provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device,

and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message.  For example, OOCL's shipping containers ("shipment conveyance device"), fitted with monitoring devices, send information ("message") including one or more of, but not limited to, location, temperature and humidity, to OOCL's customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through My OOCL Center). Therefore, OOCL provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

108.   As described above (*see* ¶ 55), and upon information and belief, OOCL provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, OOCL's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor and a humidity sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, OOCL's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device.

109.   As described above (*see* ¶ 56), and upon information and belief, OOCL also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force

exerted on the shipment conveyance device.  For example, OOCL's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to OOCL's customers. Therefore, OOCL provides a message which contains information regarding temperature of shipment and a change in shipment temperature.

110.   As described above (*see* ¶ 56), and upon information and belief, OOCL further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device. For example, upon information and belief OOCL's shipping containers equipped with monitoring devices store geofencing parameters allowing OOCL and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, OOCL's shipping containers equipped with monitoring devices detect events related to deviation from a pre-determined transportation route.

111.   As described above (*see* ¶ 58), and upon information and belief, OOCL further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage is a refrigerated container, a heated container, or an insulated container.  For example, OOCL's shipping containers include refrigerated reefer containers.

112.   To the extent OOCL continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '268 Patent, such infringement is necessarily willful and deliberate.

113.   On information and belief, OOCL has a policy or practice of not reviewing the patents of others.  Further on information and belief, OOCL instructs its employees to not review the

patents of others for clearance or to assess infringement thereof.  As such, OOCL has been willfully blind to the patent rights of Plaintiff.

114.    Each of OOCL's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT V

### (Infringement of U.S. Patent No. 7,253,731)

115.    Plaintiff incorporates the above paragraphs by reference.

116.    OOCL has been on actual notice of the '731 Patent at least as early as the date it received service of this Original Complaint.

117.    On information and belief, OOCL owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

118.    Upon information and belief, OOCL has directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11 and 16 of the '731 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

119.    OOCL, with knowledge of the '731 Patent, also infringes at least Claims 1, 5, 9, 11 and 16 of the '731 Patent by inducing others to infringe the '731 Patent.  In particular, OOCL intends to induce its customers to infringe the '731 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

120.    OOCL also induces others, including its customers, to infringe at least Claims 1, 5, 9, 11 and 16 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

121.    As described above (*see* ¶ 51), and upon information and belief, OOCL makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is associated with a shipment, and further wherein the shipment

conveyance device is at least one of a shipping container, a pallet, and a tote.  For example, OOCL provides shipping containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with monitoring devices.

122.   As described above (*see* ¶ 86), and upon information and belief, OOCL provides a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein information regarding the shipment is stored in the memory device, and further wherein the information regarding the shipment includes a description of a good, product, or item, being shipped or transported via the shipment conveyance device, and at least one of origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, and payment instruction information, regarding the shipment. For example, OOCL's shipping containers are fitted with monitoring devices which comprise sensors including one or more of, but not limited to, temperature sensor and humidity sensor for measuring and transmitting information related to one or more of, but not limited to, temperature and humidity experienced by the shipping container ("shipment conveyance device"). As a further example, OOCL's shipping containers equipped with monitoring devices store at least an identification of OOCL (since it communicates position of the container and measurements from the sensors including but not limited to humidity sensor and temperature sensor, to a central server), and therefore OOCL provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, OOCL's shipping containers equipped

with monitoring devices store at least an identification of OOCL's container (since it communicates position of the container and measurements from the sensors including but not limited to humidity sensor and temperature sensor, to a central server), and therefore OOCL provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, OOCL's shipping containers equipped with monitoring devices store at least an identification of OOCL's customer (since it communicates position of the container and measurements from the sensors present in the container including, but not limited to, humidity sensor and temperature sensor, to a central server (who may have multiple customers availing OOCL's services at any given time) correlate the information to the particular customer in order to provide updates to the customer), and therefore OOCL provides a memory device which stores at least one or more of origination information, sender information, shipper information, destination information and receiver information regarding the shipment conveyance device. As a further example, OOCL's shipping containers equipped with monitoring devices store at least a description of a good, product, or item, being shipped via the shipment conveyance devices, because they identify the position/location and send the measurements from sensors including, but not limited to, humidity sensor and temperature sensor, of each individual shipment to the central server and/or OOCL's customer (who may have multiple shipments in transit at a given time). As a further example, OOCL's shipping containers equipped with monitoring devices store measurements from one or more of humidity sensor and temperature sensor, and therefore store a description of a good, product, or item, being shipped via the shipment conveyance devices. Further, OOCL's shipping containers equipped with monitoring devices store

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                    PAGE | 41

geofencing parameters allowing OOCL and/or the customer to receive alerts if the shipment conveyance device deviates from the planned route. Therefore, OOCL's shipping containers equipped with monitoring devices store at least destination information regarding the shipment conveyance devices. Further, OOCL's shipping containers equipped with monitoring devices store measurements and alerts regarding temperature and humidity and other handling parameters – and therefore stores at least handling instruction information for the shipment conveyance devices.

123.   As described above (*see* ¶ 52), and upon information and belief, OOCL provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, OOCL's shipping containers are fitted with the monitoring devices which comprise a global positioning device to determine a position/location of the shipping container. Further, OOCL provides an online platform ("My OOCL Center") which is used by customers to track and trace their cargo.

124.   As described above (*see* ¶¶ 53, 55 and 56), and upon information and belief, OOCL also provides a processing device, wherein the processing device processes at least one of information regarding the shipment and information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment or the shipment conveyance device, wherein the processing device generates a message containing information regarding the position or location of the shipment or the shipment conveyance device and information regarding at least one of the occurrence of an event, a status of the shipment, a shipment temperature, and an impact or force on the shipment conveyance device.  For example, OOCL's shipping containers are

fitted with monitoring devices ("processing devices") which measure information related to the shipping container, including one or more of, but not limited to, temperature and relative humidity and sends that information to OOCL's central servers. Therefore, OOCL provides a processor which processes information regarding the shipment conveyance device. As a further example, OOCL's shipping containers equipped with monitoring devices detect an event including one or more of, but not limited to, temperature and relative humidity and, in response to the detected event, send alerts ("message") containing information about the event to the customers of OOCL. Therefore, OOCL provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, OOCL's shipping containers, fitted with monitoring devices, measure information using sensors including one or more of, but not limited to, a humidity sensor and a temperature sensor, and transmit information in the form of alerts to OOCL's customers after a request for information is received by OOCL automatically. As a further example, OOCL's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor and a humidity sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, OOCL's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device. As a further example, OOCL's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message")

to OOCL's customers. Therefore, OOCL provides a message which contains information regarding temperature of shipment and a change in shipment temperature.

125.   As described above (*see* ¶ 54), and upon information and belief, OOCL provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with at least one of an individual or entity, a sender of the shipment, a receiver of the shipment, a carrier of the shipment, and an individual or entity authorized to receive information regarding the shipment or the shipment conveyance device.  For example, OOCL's shipping containers ("shipment conveyance device"), fitted with monitoring devices, send information ("message") including one or more of, but not limited to, location, temperature and humidity, to OOCL's customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through My OOCL Center). Therefore, OOCL provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

126.   As described above (*see* ¶ 55), and upon information and belief, OOCL provides a sensor, wherein the sensor monitors or measures at least one of a temperature during shipment, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, and a force exerted on the shipment conveyance device.  For example, OOCL's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor and a humidity sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, OOCL's shipping containers fitted with

monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device.

127.    As described above (*see* ¶ 55), and upon information and belief, OOCL also provides a message which contains information regarding at least one of a temperature of the shipment, a change in a shipment temperature, and an impact or force exerted on the shipment conveyance device.   For example, OOCL's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to OOCL's customers. Therefore, OOCL provides a message which contains information regarding temperature of shipment and a change in shipment temperature.

128.    As described above (*see* ¶ 57), and upon information and belief, OOCL further provides an apparatus wherein the event is a detection of a deviation from a pre-determined transportation route associated with the shipment.   For example, upon information and belief OOCL's shipping containers equipped with monitoring devices store geofencing parameters allowing OOCL and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, OOCL's shipping containers equipped with monitoring devices detect events related to deviation from a pre-determined transportation route.

129.    As described above (*see* ¶ 93), and upon information and belief, OOCL further provides an apparatus wherein the event is a detection of a shipment temperature which deviates from a shipment temperature requirement. For example, OOCL's shipping containers equipped with monitoring devices transmit alerts to OOCL's customers when the temperature in the container is detected beyond a threshold, and therefore, detects events including, but not limited to, deviation in shipment temperature.

130.  To the extent OOCL continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '731 Patent, such infringement is necessarily willful and deliberate.

131.  On information and belief, OOCL has a policy or practice of not reviewing the patents of others.  Further on information and belief, OOCL instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, OOCL has been willfully blind to the patent rights of Plaintiff.

132.  Each of OOCL's aforesaid activities has been without authority and/or license from Plaintiff.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Transcend respectfully requests the Court enter judgment against OOCL:

1.  Declaring that OOCL has infringed each of the Transcend Patents;

2.  Declaring that OOCL's infringement of each of the Transcend Patents has been willful and deliberate;

3.  Awarding Transcend compensatory damages as a result of OOCL's infringement of the Transcend Patents;

4.  Awarding Transcend treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of OOCL's willful and deliberate infringement of the Transcend Patents;

5.  Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining OOCL from further acts of infringement with respect to the Transcend Patents;

6.  Awarding Transcend its costs, attorneys' fees, expenses, and interest;

7.  Awarding Transcend ongoing post-trial royalties; and

8.  Granting Transcend such further relief as the Court finds appropriate.

## **JURY DEMAND**

Transcend demands trial by jury, under Fed. R. Civ. P. 38.


Dated:  January 27, 2021

Respectfully Submitted
*/s/ René A. Vazquez*
René A. Vazquez
Virginia Bar No. 41988
rvazquez@ghiplaw.com
Randall T. Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Thomas Fasone III
Texas Bar No. 00785382
tfasone@ghiplaw.com
M. Scott Fuller
Texas Bar No. 24036607
sfuller@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR
TRANSCEND LLC**